# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAMES STANLEY ROGERS, JR.,                     Case No. 1:16-cv-861
       Plaintiff,                                   Barrett, J.
                                               Litkovitz, M.J.

    vs.


COMMISSIONER OF                                **REPORT AND**
SOCIAL SECURITY,                               **RECOMMENDATION**
       Defendant.


Plaintiff James Stanley Rogers, Jr., brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc.12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply

(Doc. 18).

## I. Procedural Background

Plaintiff protectively filed his applications for DIB and SSI in July 2013, alleging

disability since November 10, 2008, due to three herniated discs in his back, a back injury, and

arthritis.[1] Plaintiff's claims were denied initially and on reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

Matthew C. Kawalek on July 14, 2015. Plaintiff and a vocational expert (VE) appeared and

testified at the ALJ hearing. On August 20, 2015, the ALJ issued a decision denying plaintiff's

---

[1] Plaintiff previously filed applications for disability benefits on November 13, 2006. (Tr. 94, 110). Plaintiff's applications were denied at the administrative level. (Tr. 68-91). Plaintiff subsequently amended his alleged onset date to January 10, 2012, which is the day after the prior administrative decision. (Tr. 232).

DIB and SSI applications.  Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps

of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can

perform other substantial gainful employment and that such employment exists in the national

economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ acknowledged that prior to the instant applications, plaintiff had filed applications

for DIB and SSI.  (Tr. 12).   Following a hearing on the previous applications, ALJ Curt

Marceille issued a decision dated January 9, 2012, in which he found that plaintiff retained the

residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving no climbing
> ladders, ropes, or scaffolds; and occasionally stooping, crouching, crawling, balancing,
> and climbing stairs  and ramps.

(Tr. 75-76).  Upon consideration of the present applications and all of the evidence of record,

the ALJ determined that departure from the previously established RFC was warranted because

plaintiff has produced new and material evidence documenting a significant change in his

condition.   (Tr. 12, citing *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th

Cir. 1997); Acquiescence Ruling 98-04(6).[2]

The ALJ applied the sequential evaluation process and made the following findings of fact

and conclusions of law:

---

[2] Under these provisions, Social Security claimants and the Commissioner are barred from relitigating
issues that have previously been determined unless certain conditions are met. AR 98-4(6), 1998 WL
283902, at *3; AR 98-03(6), 1998 WL 283901, at *3 ("When adjudicating a subsequent disability claim
with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators
must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim
in determining whether the claimant is disabled with respect to the unadjudicated period unless there is
new and material evidence relating to such a finding or there has been a change in the law. . . .").

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The [plaintiff] has not engaged in substantial gainful activity since January 10, 2012, the alleged onset date (20 CFR 404.1571, *et seq.*, and 416.971, *et seq.*).

3. The [plaintiff] has the following severe impairments: cervical, thoracic, and lumbar spine degenerative disc disease with chronic pain syndrome; status post bilateral broken wrists; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can frequently reach in all directions, handle, finger, and feel; and should avoid all exposure to hazards.

6. The [plaintiff] is unable to perform past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1962 and was 49 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

---

[3]Plaintiff's past relevant work was as a meat cutter, a skilled position performed at the heavy exertional level. (Tr. 23, 60).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 10, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-25).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

---

[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as sorter (500 jobs locally, 90,000 jobs nationally), packer (700 jobs locally, 15,000 jobs nationally), and cleaner (400 jobs locally, 100,000 jobs nationally). (Tr. 24, 61-62).

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond*, 126 F.3d at 841; AR 98-4(6), 1998 WL 283902 (June 1, 1998). Social security claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond*, 126 F.3d at 842. The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

AR 98-4(6).

### D.  Specific Errors

In his Statement of Errors, plaintiff argues that the ALJ erred by: (1)  making unexplained and inconsistent findings with respect to how plaintiff's condition changed between the date of the prior ALJ's decision and the date of ALJ Kawalek's decision; (2) improperly discounting plaintiff's credibility without objective evidence to support his finding; and (3) improperly weighing the medical opinion evidence and not providing "good reasons" for giving reduced weight to the opinion of plaintiff's treating physician, Dr. Gary Ray, M.D.  (Docs. 12 and18).

### 1. The ALJ's res judicata determination

In the prior ALJ decision issued on January 9, 2012, ALJ Marceille found that plaintiff had the severe impairments of lumbar strain, degenerative disc disease, and disc herniation at C3-4.  (Tr. 73).  The ALJ found that plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving no climbing ladders, ropes, or scaffolds; and occasionally stooping, crouching, crawling, balancing, and climbing stairs  and ramps.

(Tr. 75-76).

In his August 20, 2015 decision, ALJ Kawalek found that plaintiff had the severe impairments of cervical, thoracic, and lumbar spine degenerative disc disease with chronic pain syndrome; status post bilateral broken wrists; and obesity.  (Tr. 15).  The ALJ found that plaintiff had produced "new and material evidence documenting a significant change" in his condition so that the prior RFC determination was not binding.  (Tr. 12).  ALJ Kawalek found that plaintiff had the RFC to perform

> light work as defined in in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can frequently reach in all directions, handle, finger, and feel; and should avoid all exposure to hazards.

(Tr. 17).  Thus, ALJ Kawalek assessed additional restrictions in his RFC finding limiting plaintiff to occasional kneeling; frequent reaching in all directions, handling, fingering, and feeling; and avoiding all exposure to hazards.  (*Id.*).

Plaintiff challenges the ALJ's application of the *Drummond* rule on the ground that by stating there had been a significant change in plaintiff's condition, the ALJ suggested plaintiff's condition had worsened; however, the RFC is nearly identical to the prior RFC except for the restrictions on reaching, manipulation, and exposure to hazards.  (Doc. 12 at 8-9).  Plaintiff has

not shown the ALJ committed any error in this regard.  First, plaintiff does not explain why a significant change can only mean a worsening in an individual's condition as opposed to improvement.  Second, the ALJ's formulation of a more restrictive RFC is consistent with a finding of a worsening in plaintiff's condition since the prior ALJ decision.

Plaintiff also challenges the ALJ's application of the *Drummond* rule on the ground the ALJ did not identify in his written decision the "new and material evidence" and the "significant change" in plaintiff's condition that led him to conclude the prior RFC finding was not binding. (Doc. 12 at 9).  Plaintiff alleges the evidentiary basis for this finding "remains a mystery."  (*Id*.). Contrary to plaintiff's argument, the ALJ clearly identified the basis for his finding that there had been a significant change in plaintiff's condition and the reason for adding limitations to the prior RFC finding.  ALJ Kawalek stated in his written decision that he added the manipulative and environmental limitations to the limitations assessed by state agency reviewing physician Dr. Maureen Gallagher, D.O., to account for bilateral wrist fractures plaintiff had sustained after her review.  (Tr. 23).  The ALJ also stated in connection with his discussion of the assessment of Dr. Phillip Swedberg, M.D., which had been considered by the prior ALJ, that he did not "see any objective worsening in [plaintiff's] physical conditions . . .  that would warrant significantly greater residual functional capacity restrictions in his current records other than possible residual effects from his wrists fractures; however, these were accounted for with the manipulative limitations and hazard precautions contained in his residual functional capacity []."  (Tr. 22, citing Tr. 317-18).  Thus, the ALJ fulfilled his duty to explain the basis for his finding that he

was not bound by the prior RFC finding and his reason for adding limitations to the RFC finding to account for plaintiff's bilateral wrist fractures.[5]

Plaintiff's first assignment of error should be overruled.

## 2. Substantial evidence supports the ALJ's decision to give little weight to the opinions of Dr. Ray.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

---

[5] Plaintiff states in connection with his first assignment of error that a determination of whether he can perform light work is pivotal to the outcome of this case under application of the Medical-Vocational Guidelines (the Grid) because he would be disabled under the Grid if limited to sedentary work; therefore, it is imperative to determine the evidentiary basis for the ALJ's finding that he can perform light work. (Doc. 12 at 9). Plaintiff's argument has no bearing on whether the ALJ properly identified the "new and material evidence" and the "significant change" in plaintiff's condition that led him to find the prior RFC finding was not binding and to impose additional restrictions.

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2) )(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 at *5 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

A summary of the record medical evidence shows that plaintiff suffered a work-related injury while working at a grocery store in 2008 resulting in neck and back pain. (Tr. 294-315). He initially treated at the emergency room for evaluation. He followed up with Dr. Jose

Martinez, M.D., and was treated with medications. (Tr. 274-93). He also treated with Dr. Mitchell Simons, M.D., with multiple epidural steroid injections and nerve blocks without improvement in his condition. (Tr. 324-29).

An MRI scan of the cervical spine taken on June 27, 2011, showed a C3-4 disc herniation with multiple level degenerative disc disease and congenitally narrow spinal canal. (Tr. 489). Plaintiff underwent an MRI scan of the thoracic spine on June 29, 2011, which showed degenerative disc disease without evidence of disc herniation, spinal stenosis or cord compression. (Tr. 490).

Plaintiff presented to the emergency department at Fort Hamilton Hospital on August 10, 2012, with complaints of neck pain and headache. Plaintiff reported that the pain goes from his neck all the way down his back into both hips. Plaintiff rated his pain severity at a level of 9 on a 0-10 visual analog scale. He reported that his pain began from a work related injury in the past. It was noted that this was plaintiff's fifth visit in about a month's time. "According to his profile if he had indeed used the medications as they were prescribed over the last 5 visits he would still have an active opiate prescription." (Tr. 358). Plaintiff was assessed with drug seeking behavior. (Tr. 360).

An MRI of the lumbar spine on April 2, 2013, showed degenerative disc disease, with shallow disc displacement and facet arthropathy. (Tr. 491). Plaintiff underwent an x-ray of the cervical spine on April 22, 2013, which showed moderate degenerative spurring most prominent at C5-6. (Tr. 485).

Plaintiff presented to the emergency department at Fort Hamilton Hospital on April 30, 2013 with acute onset anterior chest pain with associated shortness of breath and upper back pain. (Tr. 447). On examination, plaintiff exhibited good range of motion in all major joints, no

11

tenderness to palpation, normal motor strength, and normal sensory function. (Tr. 448). A chest x-ray showed no findings for acute cardiopulmonary disease. (Tr. 450). Plaintiff's cardiac exam was unremarkable. Ancillary studies including chest x-ray, d-dimer, initial cardiac enzymes and repeat 120 minutes cardiac enzymes, EKG, CBC and CMP were unremarkable. The emergency room physician concluded this was a low likelihood of cardiac event. (Tr. 451). On discharge, plaintiff requested Percocet for pain. He was "insistent upon narcotic pain medication related to prior Medrol Dosepak and Flexeril prescriptions without effect." (*Id*.). The emergency room physician agreed to provide 6 tablets of Norco and he suspected drug-seeking behavior. (*Id*.).

Plaintiff began treating with physical medicine and rehabilitation specialist, Dr. Gary L. Ray, M.D., on May 20, 2013. (Tr. 482-84). Plaintiff reported he suffered an industrial injury in 2008 resulting in neck and back pain. He was treated with medications, chiropractic treatment and therapy without improvement in his condition. He underwent a surgical evaluation and it was thought that he would not benefit from any type of surgery. Plaintiff reported his neck pain was intermittent and occurred with motion of the spine. He reported some loss of motion of the spine. The pain intensity varied anywhere from moderate to severe. He reported having upper extremity pain and tingling to the hands. He denied any significant weakness of the upper extremities. Plaintiff reported having constant severe mid back pain. He reported having moderate intermittent low back pain. (Tr. 482).

On examination of the spine, Dr. Ray found normal alignment. There was moderate tenderness at the cervical, thoracic, and lumbosacral midline and paraspinal areas. There was tightness of the muscles. The cervical spine motion showed flexion to 50 degrees, extension to 30 degrees, right and left lateral flexion to 30 degrees, right and left rotation to 30 degrees. The thoracic lumbar spine motion showed flexion to 70 degrees, extension to 10 degrees, right and

left lateral flexion to 15 degrees, and right and left rotation to 20 degrees. The sensory examination to touch was normal throughout in his upper and lower extremities. On manual muscle testing there was 5/5 strength throughout in the upper and lower extremities. Straight leg raising was negative. Deep tendon reflexes were 1 at the biceps, triceps, and knees and 0 at the ankles. Dr. Ray assessed neck pain secondary to degenerative disc disease, cervical spondylosis, and C3-4 disc herniation with possible cervical radiculitis, and mid back pain secondary to thoracic disc herniation, degenerative disc disease, and spurring and low back pain likely secondary to degenerative changes. Dr. Ray prescribed opiate medication and an antidepressant, noting medications would work best to control the pain and to allow him to function at a reasonable level. (Tr. 483-84).

When examined in July 2013, plaintiff exhibited a mild stiff gait pattern; moderate tenderness at the cervical, thoracic, and lumbosacral midline/paraspinal areas; mild tightness of muscles; mild to moderate decrease in motion; and normal strength and sensation in his extremities. (Tr. 480).

Dr. Ray provided several medical opinions on plaintiff's behalf. (Tr. 476-78, 492-95, 496-98, 595). In August 2013 and October 2013, Dr. Ray opined that plaintiff was limited to "sedentary type of activities." (Tr. 478, 498).

On September 4, 2013, Dr. Ray completed a Lumbar Spine Residual Functional Capacity Questionnaire. (Tr. 492-95). Dr. Ray opined that plaintiff could frequently lift and carry less than ten pounds; occasionally lift ten pounds; sit for thirty minutes; stand for one hour; and walk for one block without rest or severe pain. (Tr. 493-94). Dr. Ray also opined that plaintiff could rarely twist, stoop (bend), crouch, squat, and climb stairs and never climb ladders. Dr. Ray further opined that plaintiff had significant limitations reaching, handling or fingering. (Tr. 495).

13

Dr. Ray concluded that plaintiff would have "good days" and "bad days" and be absent about four days per month due to his impairments or treatment. (*Id.*).

Dr. Ray examined plaintiff in November and December 2013 and March 2014. On examination, plaintiff ambulated with a mild stiff gait pattern. He exhibited a mild protruding abdomen. There was moderate tenderness at the cervical, thoracic, and lumbosacral midline and paraspinal areas; mild tightness of the muscles; and tenderness at the bilateral hips, knees, ankles. There was mild to moderate decrease in motion of the spine and pain at the end of range of motion. There was a mild decrease in motion of the joints and mild decrease in sensation of the legs. He had nearly normal strength in the legs. (Tr. 504-505, 506, 507).

When examined by Dr. Ray in April 2014, Dr. Ray found that plaintiff ambulated with a mild to moderate stiff gait pattern. Plaintiff exhibited a mild protruding abdomen; moderate tenderness at the cervical, thoracic, and lumbosacral center and paraspinal areas; mild tightness of the muscle; tenderness at the bilateral hips, knees, ankles; mild decrease in motion of the joints; mild swelling of the knees and ankles; popping with motion of the joints; and decrease in sensation in the distal upper and lower extremities. Plaintiff had nearly normal strength in the extremities. Overall, Dr. Ray found plaintiff's condition was stable. There was no sign of aberrant behavior. He was encouraged to continue with the exercises and walking and given a refill of his medications. (Tr. 503).

On September 30, 2014, Dr. Ray completed a form on behalf of the Butler County Job and Family Services in which he opined that plaintiff could lift and carry up to ten pounds, sit for up to thirty minutes, stand for up to forty-five minutes at a time, and walk for up to thirty minutes at a time. (Tr. 595).

The ALJ gave "little weight" to Dr. Ray's Lumbar Spine Residual Functional Capacity Questionnaire. (Tr. 22, citing Tr. 493). The ALJ determined there was no basis in the record supporting Dr. Ray's opinion that plaintiff's pain would frequently interfere with attention and concentration aside from plaintiff's subjective complaints, which the ALJ found not credible. The ALJ stated that neither Dr. Ray nor any other provider ever mentioned deficits in this area. (*Id.*).[6] The ALJ also rejected Dr. Ray's opinion that plaintiff would miss more than four days of work per month as there was no basis provided by Dr. Ray for this opinion and it was not supported by the longitudinal record. (*Id.*). The ALJ further found that the longitudinal record did not support the limitation to sedentary work that Dr. Ray assessed, "particularly given the claimant's normal objective findings made in the hospital and his retained activities of daily living, including his walking to and from Dr. Ray's office," which was more than one-half mile from plaintiff's home. (Tr. 20, 22).

With respect to Dr. Ray's opinions that plaintiff was limited to a sedentary residual functional capacity (Tr. 478, 498, 595), the ALJ determined that "these are conclusory statements that are not consistent with the longitudinal record as described above." (Tr. 22). The ALJ found "numerous reports of ongoing functioning, including significant walking activities and riding his bicycle." (Tr. 22-23, citing Tr. 412, 504). The ALJ stated that other providers clearly noted that plaintiff had normal neurological and musculoskeletal findings despite his allegations of disabling pain, which did not support a limitation to sedentary work. (Tr. 23, citing Tr. 363, 415). Finally, the ALJ reiterated that "the longitudinal record does not support the extent of the limitations to a reduced range of sedentary work, particularly given the

---

[6] For example, plaintiff's psychiatric examinations consistently demonstrated a normal mood, affect, and judgment. (Tr. 311, 360, 367, 393, 409, 424, 436, 449, 519, 550, 555).

indications of his walking to Dr. Ray's office and back home, which was more than a mile of walking round trip." (Tr. 23).

Plaintiff contends that the ALJ improperly weighed the opinions of Dr. Ray, his long-term treating physician. Plaintiff alleges the ALJ failed to give "good reasons" for giving little weight to Dr. Ray's opinions and "determined issues requiring medical expertise using his own intuitive non-expert reasoning." (Doc. 12 at 2).

In discussing this statement of error (Doc. 12 at 12-15), plaintiff has not cited to *any* medical evidence whatsoever in his brief that conflicts with the ALJ's findings set forth above. Nor has plaintiff explained why he believes the ALJ's determinations in these regards are not supported by substantial evidence or are contrary to the regulatory or case authority governing the weight to treating physicians. (*Id.*). To the contrary, plaintiff merely alleges that "[t]he ALJ made *his own* determination with no citation to any professional evaluation exemplified by his statement, 'The bulk of the claimant's medical records fail to show significant and ongoing physical manifestations of his impairments that would support greater restrictions than those found in his residual functional capacity.'" (Doc. 12 at 13, citing Tr. 20) (emphasis in the original). This statement does not address any alleged deficiencies in the ALJ's assessment of Dr. Ray's opinions. Nor does plaintiff cite to any record evidence explaining why he believes Dr. Ray should have been afforded greater weight than that given by the ALJ. In any event, the ALJ's analysis of the medical evidence in the record is very thorough and the Court declines to speculate on any alleged deficiencies in the ALJ's decision without any assistance or explanation from plaintiff in his statement of errors.

Plaintiff's statement of errors then notes that the ALJ gave significant weight to the opinion of one state agency consultant and moderate weight to the opinion of another state agency consultant (Doc. 12 at 13-14, citing Tr. 23) and states:

> Both these doctors are nonexaminers and the ALJ's endorsement of the State agency non-examiners and the prior RFC of ALJ Marceille is especially interesting in light of ALJ Kawalek's finding that "the claimant has produced new and material evidence documenting a significant change in the claimant's condition. Thus Judge Marceille's previous residual functional capacity is not binding." (P. 43, Tr. 12).

(Doc. 14 at 14). The Court is unable to discern any cognizable argument by plaintiff in this regard.

Finally, although not entirely clear, plaintiff appears to also argue in his statement of errors that the ALJ was required to recontact Dr. Ray for clarification under Social Security Ruling 96-5p. (Doc. 14 at 15). Social Security Ruling 96-5p seeks to "clarify Social Security Administration policy on how we consider medical source opinions on issues reserved to the Commissioner, including . . . whether an individual is 'disabled' under the Social Security Act." Soc. Sec. R. 96-5p, 1996 WL 374183, at *1 (Jul. 2, 1996).[7] Under this Ruling, the ALJ must "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear." Id. at *2. In this case, the ALJ gave no indication that he found the bases of Dr. Ray's findings unclear. Rather, the ALJ found those bases were insufficient to support Dr. Ray's findings. (Tr. 22-23). "[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as

---

[7] The Sixth Circuit has assumed without deciding that "Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (citing *Wilson*, 378 F.3d at 549).

here, the ALJ rejects the limitations recommended by that physician." *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Comm'r of Soc.Sec.*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)). Dr. Ray's opinions were rejected not because their bases were unclear, but because they were not supported by Dr. Ray's treatment records, the objective and clinical evidence, and other evidence of record.[8]

As a final matter, the Court notes that in his reply brief, plaintiff argues for the first time that the "ALJ is not a physician and cannot make evaluations based on raw medical data without reliance on 'expert medical' evaluation of some sort"; the ALJ erred in weighing the opinions of the state agency physicians because they did not examine plaintiff and did not have Dr. Ray's records at the time of their review; the ALJ based the RFC on "the ALJ's own personal lay interpretation" of the records; and the "non-treating doctors" did not suggest any course of treatment different than that provided by Dr. Ray. (Doc. 18 at 7-9). Plaintiff did not raise these issues in his statement of errors and his reply brief is not the proper place to raise new issues. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Boothe v. Comm'r of Soc. Sec.*, No. 1:06-cv-784, 2008 WL 281621, at *8 n.1 (S.D. Ohio Jan. 31, 2008); *Bishop v. Oakstone Academy*, 477 F. Supp.2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief.").

Accordingly, plaintiff's statement of error concerning the ALJ's assessment of Dr. Ray's opinions should be overruled.

---

[8] The Sixth Circuit in *Ferguson* noted that the requirements of SSR 96-5p "parallel those set forth in 20 C.F.R. § 404.1512(e) and 20 C.F.R. § 416.912(e), which also recognize a duty to recontact in cases where the evidence from the treating physician is inadequate to determine disability and contains a conflict or ambiguity requiring clarification." 628 F.3d at 273 n.2. Sections 404.1512(e) and 416.912(e) were amended effective March 26, 2012, and the provisions for recontacting a treating physician or other medical source are now found at 20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c)(1). The regulations as amended specify that recontacting a treating physician or other medical source is permissive, not mandatory. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) ("We *may* recontact your treating physician, psychologist, or other medical source.") (emphasis added).

### 3. The ALJ's credibility finding is substantially supported.

Plaintiff challenges the ALJ's credibility finding. (Doc. 12 at 10-12). In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id*. at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id*.

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type,

dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or other symptoms; treatment other than medication plaintiff has received for relief of his pain; and any measures the plaintiff uses to relieve his pain. *Id.* at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish he is disabled, *Duncan,* 801 F.2d at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

At the ALJ hearing, plaintiff testified that he has pain in his neck and middle and lower back that is starting to "shoot down" into his left hip, and he has trouble walking because his upper body faces to the right. (Tr. 41-42). Walking "any amount of distance" causes a lot of pain. (Tr. 42). He has limited range of motion in the neck and during the day does not move his neck from left to right much. (Tr. 42-43). He brought a cane to the hearing and testified he uses it to take some of the pressure off of his left hip when he is walking. (Tr. 43). He sometimes falls and he had fallen getting out of his sister's pool. (Tr. 43-44). Plaintiff testified that he broke his wrists when he caught his foot on a stair and he has lost probably 50% to 60% of the mobility in his hands. (Tr. 44-46). He gets headaches and dizziness a lot since his fall down the stairs, whereas he never had headaches before. (Tr. 46, 47). He also gets headaches if he uses his neck too much, and he explained that he has full custody of his 10-year-old daughter who he tries to keep happy and do things with. (Tr. 46). Since 2008, he is able to shower only once every three weeks and his back pain limits his ability to reach. (Tr. 47).

Plaintiff testified that he can sit 10 to 15 minutes before he has to change positions; he can stand 3 to 4 minutes; he needs to elevate his legs all day to take the pressure off his hip and back and this was the case in 2012 and 2013. (Tr. 48-49). Plaintiff rode a bicycle for transportation around the time he was hit by a car while riding his bike in June 2012. (Tr. 51-53). Plaintiff testified that he walked to his appointments with Dr. Ray at Fort Hamilton Hospital. (Tr. 54). Plaintiff also testified that he sits in a recliner all day and watches television unless he has taken his medication and feels okay, in which case he will walk over to a neighborhood park with his daughter and sit on a bench and watch her play or go to his sister's pool and sit on the deck and watch his daughter play. (Tr. 57-58). Plaintiff testified that he obtained full custody of his 10 year-old daughter in 2014 and they live with his mother. (Tr. 50).

The ALJ found plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. The ALJ determined that: (1) plaintiff's allegations as to his symptoms and limitations were inconsistent with the medical evidence of record; (2) his allegations about the severity of his physical impairments were inconsistent with his own reports about his activities of daily living; and (3) plaintiff's drug-seeking behavior reflected negatively on his credibility. (Tr. 18-23).

Plaintiff contends the ALJ erred by discounting his testimony as to his subjective allegations of pain and limitations on the ground the testimony was inconsistent with the objective medical evidence. (Doc. 12 at 10-12). Plaintiff alleges the ALJ cited no medical opinion that supports a finding that he can perform light work and the opinions of plaintiff's treating physician, Dr. Ray, are consistent with the ability to perform less than sedentary activity. Plaintiff indicates that the ALJ erred by indicating plaintiff walked daily to Dr. Ray's office rather than monthly and inferred based on plaintiff's ability to walk this distance that plaintiff

could do more than sedentary work. (Doc. 18 at 5, citing Tr. 22). Plaintiff further contends that the ALJ has implied he can perform greater exertional activities than he is capable of performing based on the fact that he has full custody of his daughter, even though he did not retain full custody until March of 2014, and the ALJ did not discuss the exertional requirements of the custody situation. (*Id*. at 5-6, citing Tr. 18).

There is no dispute that plaintiff suffers from underlying medical conditions that could reasonably be expected to cause his alleged symptoms. The question, however, is whether the objective medical evidence confirms the severity of the pain alleged by plaintiff, or whether plaintiff's underlying medical impairments are severe enough that they can reasonably be expected to produce his allegedly disabling pain. *Duncan*, 801 F.2d at 853. The ALJ reasonably determined that the medical evidence does not support plaintiff's allegations of disabling impairments.

As the ALJ noted, the objective medical evidence since January 2012, generally shows normal clinical findings including normal range of motion, good muscle strength, no tenderness to palpation, negative straight leg test results, and normal sensation. (Tr. 18-20; *see* Tr. 391-93, 401-03, 408-09, 414-15, 424-25, 430-31, 441-42, 448-49). Although Dr. Ray at times reported abnormal clinical findings, those findings were not corroborated by the examining emergency room physicians. Further, imaging findings were mild to moderate in severity. (Tr. 20; *see* Tr. Tr. 418-19- 6/12 x-rays disclosed mild degenerative changes of the knee, mild spondylosis of the cervical spine, transitional lumbar vertebra without fracture or spondylolisthesis; Tr. 491- 4/13 lumbar spine MRI showed degenerative disc disease, with shallow disc displacement and facet arthropathy). The relatively benign clinical findings and mild to moderate imaging findings

support the ALJ's finding that plaintiff's description of the limitations caused by his musculoskeletal impairments were not fully credible.

The ALJ also reasonably relied on plaintiff's reports of daily activities to discount his credibility. Plaintiff was able to ride a bike in June of 2012 despite his complaints of disabling pain (Tr. 412) and hospital records dated just three weeks after his trip to the emergency room following his bicycle accident report that plaintiff had been "walking around without difficulty" since being struck by a car several weeks earlier. (Tr. 429). Plaintiff reported to Dr. Ray in October 2013 that although walking tended to increase his pain, he had gone to the Reds game and "with the extensive walking he was more sore for about 4 days."[9] (Tr. 21, citing Tr. 499). Plaintiff also testified, and records document, that he walked to and from his appointments with Dr. Ray, whose office was more than one-half mile from plaintiff's home. (*Id.*, citing Tr. 504-3/16/14 treatment note states that plaintiff "does try to exercise and walk on a regular basis" and that he "did walk [to] today's appointment."). In addition, plaintiff reported to Dr. Ray as recently as May 22, 2015, that his symptoms were essentially unchanged and that "[h]e tries to exercise and walk as tolerated" and "does stay physically active with doing activities with his daughter." (Tr. 21, citing Tr. 597). Dr. Ray encouraged plaintiff to exercise and walk as tolerated. (*Id.*). The ALJ reasonably determined that plaintiff's bicycle riding, walking, and physical activities with his daughter were inconsistent with his testimony that he can sit only 10 to 15 minutes before he must change positions, he can stand only 3 to 4 minutes at a time, and he needs to elevate his legs all day to take the pressure off his hip and back. (Tr. 48-49). The ALJ

---

[9] Plaintiff argues in his reply brief that by characterizing plaintiff's walks to and from his doctor's appointments as "daily activities," the ALJ erroneously represented that plaintiff went to appointments with Dr. Ray on a "daily" basis. (Doc. 18 at 15). The ALJ gave no indication in his written decision that he mistakenly believed plaintiff walked to appointments with Dr. Ray on a daily basis. Further, the ALJ properly found plaintiff's far less frequent walks to and from his appointments with Dr. Ray to be inconsistent with plaintiff's subjective complaints.

did not err by finding plaintiff's daily activities cast doubt on the credibility of his allegations of debilitating neck, back and hip impairments.

In addition, plaintiff does not dispute the instances of drug-seeking behavior the ALJ reasonably relied on to discount his credibility. The ALJ noted that plaintiff was diagnosed with drug-seeking behavior after he presented to the emergency room in April 2012 complaining of back pain. (Tr. 18, citing Tr. 360). The attending physician noted the examination results were inconsistent as plaintiff's back was "very tender" on one pass and not as tender or "nontender" on the same pass just seconds later. (*Id*.). According to the records, plaintiff was at the emergency room for his fifth visit in about one month and if had been compliant with his prescription over the last five visits, he would still have an active opiate prescription. (*Id*., citing Tr. 358). The attending physician informed plaintiff that he had concerns regarding the multiple visits plaintiff had made for back pain and he was not comfortable prescribing drugs for chronic conditions given that plaintiff should still be on his medication. (*Id*., citing Tr. 360). The ALJ also noted that in June 2012, plaintiff presented to the emergency room complaining of left knee and left hip pain after claiming a motor vehicle hit him while he was on his bicycle; however, the attending physician noted that when he walked by plaintiff he was "resting comfortably in the chair almost asleep," no neurological deficits were noted, and x-rays disclosed only mild degenerative changes of the knee and mild spondylosis of the cervical and lumbar spine and transitional lumbar vertebra without fracture or spondylolisthesis. (*Id*., citing Tr. 413; Tr. 418-19). The ALJ noted that plaintiff was again diagnosed with drug-seeking behavior after presenting to the emergency room later that month with complaints of acute exacerbation of chronic low back pain. (Tr. 19, citing Tr. 431). The emergency room records report that plaintiff protested when the attending physician informed him he would not be given narcotics to

take home with him, reportedly stating he needed "strong pain medicines" in order to keep up with his young daughter who had been staying with him the past three weeks. (*Id*.). In April 2013, hospital records reflect that plaintiff became angry when he did not receive pain medications. (Tr. 21, citing Tr. 453- emergency room notes reported that plaintiff walked to the hospital, he had seen a new doctor that morning for back pain but had not received any pain medication and was scheduled for an epidural in July, he reported his pain was a "10", he complained his arm and face felt numb, he was upset, and he was asking for narcotics). The ALJ reasonably determined that plaintiff's diagnoses of drug-seeking undermined his credibility when considered with the lack of objective findings to substantiate plaintiff's complaints of pain, the changing nature of his complaints, and plaintiff's willingness to leave the hospital once he knew he would not receive drugs. (*See* Tr. 410, 4/10/12 treatment note- plaintiff reported to hospital complaining of 10/10 pain radiating from mid-back to neck but left hospital once he was informed he would not receive drugs).

The ALJ's credibility assessment is entitled to deference. The ALJ reasonably took the above factors into consideration in discounting plaintiff's credibility. The ALJ thoroughly evaluated the evidence of record and gave reasons for his credibility finding that are substantially supported by the record. Plaintiff has not shown that the ALJ committed any error in connection with the assessment of his credibility. Plaintiff's credibility statement of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The ALJ's decision be **AFFIRMED** and this case be **CLOSED** on the docket of the

Court.


Date:   8/15/2017                         *s/Karen L. Litkovitz*
                                          Karen L. Litkovitz
                                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JAMES STANLEY ROGERS, JR.,               Case No. 1:16-cv-861
        Plaintiff,                           Barrett, J.
                                          Litkovitz, M.J.

        vs.

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).